UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| JIMMIE STEPHENS, et al. | Case No. CV 15-5568 R(JC) |
|---|---|
| Plaintiffs, | ORDER TO SHOW CAUSE WHY ACTION AND SECOND AMENDED COMPLAINT SHOULD NOT BE DISMISSED |
| v. | |
| ST. FRANCIS MEDICAL CENTER, et al., | |
| Defendants. | |

## I. BACKGROUND AND SUMMARY

On July 22, 2015, Jimmie Stephens, who is in custody and subsequently paid the filing fee, filed a *pro se* Complaint ("Original Complaint" or "OC"), pursuant to 42 U.S.C. § 1983 ("Section 1983") assertedly on behalf of his deceased mother Velva Stevens, and with the authorization of six immediate family members Shirley Stephens Shepard, Sayzorn Stephens, Lloyd Wayne Stephens, Joseph Hill, Karl Thursby and Ivory Taylor ("Immediate Family Members"). (Docket Nos. 1, 18; OC at 1-2 & ¶¶ 1, 5-6). The Original Complaint appeared to sue the St. Francis Medical Center ("SFMC") and multiple individuals affiliated with SFMC – Dr. O.L. Robinson, Dr. Maneesh Bansai (also referred to as Bansil and Bansi), Dr. J. Omega, Dr. Dana, Nurse Yeti, and multiple other employees. (OC at 1-3 & ¶¶ 7-

13). It essentially alleged that defendants violated the civil rights of Jimmie Stephens and his mother, who purportedly died as a result of defendants' inadequate medical treatment, malpractice and deliberate indifference. (OC ¶¶ 1, 14-34).

On August 17, 2015, Jimmie Stephens filed a First Amended Complaint ("First Amended Complaint" or "FAC") which was also purportedly brought pursuant to Section 1983 on behalf of his deceased mother Velva Stevens, but this time alleged that the Immediate Family Members were also "plaintiffs in this action." (Docket No. 8; FAC at 1-2 & ¶¶ 5-6). The First Amended Complaint again appeared to sue SFMC and multiple individuals affiliated with it – Dr. O.L. Robinson, Dr. Jagan Bansil, Dr. J. Omega, Dr. Salvatore Danna, Nurse Yeji Shin, and multiple other employees. (FAC at 1-3 & ¶¶ 7-13). The court subsequently granted Jimmie Stephens' motion to correct the First Amended Complaint to reflect that Velva Stephens was not a plaintiff and that there were a total of seven (7) plaintiffs – Jimmie Stephens and the six Immediate Family Members. (Docket Nos. 11, 19). The First Amended Complaint again essentially alleged that defendants violated plaintiffs' civil rights in connection with the death of Velva Stephens. (FAC ¶¶ 1, 14-32).

On October 8, 2015, this Court issued an Order to Show Cause Re Dismissal ("First OSC") advising Jimmie Stephens that the First Amended Complaint was deficient in multiple respects, and directing him to either (1) show good cause in writing why the Court should not *sua sponte* dismiss the First Amended Complaint for lack of subject matter jurisdiction and/or failure to state a claim, or (2) file a Second Amended Complaint that cured the identified pleading deficiencies in the First Amended Complaint.

On October 26, 2015, Jimmie Stephens filed the operative Second Amended Complaint ("Second Amended Complaint" or "SAC") which reflects that he and the six Immediate Family Members – all "for Velva Stephens (deceased)," who

elsewhere is also referenced as a "plaintiff"[1] – sue seven defendants: the SFMC, Dr. Robinson, Dr. Bansil, Dr. Omega, Dr. Danna, Nurse Shin, and a new defendant, "Lil House Mary Care" (collectively "defendants"). (SAC at 1-4 & ¶¶ 6-13). Very liberally construed, the Second Amended Complaint purports to assert federal claims under 42 U.S.C. Section 1981 ("Section 1981") (racial discrimination in private contracts), Section 1983, 42 U.S.C. § 1395dd ("Patient Anti-Dumping Act"), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*. (collectively "federal claims"), as well as claims for negligence, medical malpractice, and wrongful death under California state law ("state law claims"). The Second Amended Complaint sues all defendants in their individual and official

///

///

///

---

[1]To the extent plaintiffs, all of whom are *pro se* litigants, contend that they represent or are able to seek relief on behalf of Velva Stephens or the estate of Velva Stephens, they are incorrect. See Simon v. Hartford Life, Inc., 546 F.3d 661, 665 (9th Cir. 2008) (courts routinely adhere to general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity) (citations omitted); Iannaccone v. Law, 142 F.3d 553, 559 (2d Cir. 1998) (even representative of decedent's estate may not proceed *pro se* in action by estate where the estate has beneficiaries or creditors other than the representative) (citation omitted). see, e.g., Jones v. Correctional Medical Services, Inc., 401 F.3d 950, 951 (8th Cir. 2005) (non-attorney administrator of estate prohibited from proceeding *pro se* when there are other beneficiaries or creditors of the estate); Stewart v. Chelan County District Court, 2007 WL 870345, *4 (E.D. Wash. Mar. 19, 2007) (dismissal proper remedy where *pro se* plaintiff purports to represent decedent's estate in litigating issue of interest specific to estate) (citing Iannaccone, 142 F.3d at 559). Further, to the extent the reference to Velva Stephens as a "plaintiff" (see, e.g., SAC ¶¶ 1, 6-14, 17), is intended to render her or her estate a plaintiff in this action, the Second Amended Complaint is deficient in that it is not signed by a licensed attorney on behalf of Velva Stephens/her estate as required by Rule 11 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 11(a) (court must strike unsigned paper unless omission promptly corrected after being called to attorney's or party's attention); Hurt v. United States, 2014 WL 184238, *2 (S.D. Ohio Jan. 14, 2014) (complaint filed by *pro se* plaintiff for such plaintiff and Black Panther Party ("BPP") violated Rule 11 because plaintiff could not sign for BPP and neither BPP nor licensed attorney had signed complaint).

capacities, and seeks declaratory, injunctive, and monetary relief.  (SAC ¶ 13; SAC at 7).[2]

No defendant has yet appeared in this action and the record is devoid of any proofs of service or other evidence that any defendant has yet been served.

As the Second Amended Complaint fails to correct most, if not all, of the deficiencies in the First Amended Complaint, and as the deadline to effect service of process has expired and it appears that no defendant has been served, the Court hereby orders plaintiffs, within fourteen (14) days of the date of this order, to show good cause in writing why the Court should not *sua sponte* dismiss this action for failure to effect service upon any defendant and/or dismiss the Second Amended Complaint for failure to state a federal claim and for lack of subject matter jurisdiction as to the state law claims.

## II. GOVERNING LEGAL STANDARDS

### A. Service of Process

Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service of the summons and complaint must be accomplished on each named defendant within 90 days after the filing of the complaint.  Fed. R. Civ. P. 4(m).  For defendants who are added by later amendments to the complaint, the time limit for service runs from the date of the amendment.  McGuckin v. United States, 918 F.2d 811, 813 (9th Cir. 1990).  The failure timely to serve a defendant subjects the action to dismissal without prejudice as against such defendant absent a showing of good cause for such failure.  Fed. R. Civ. P. 4(m).

///

---

[2] Although initially signed by plaintiff Jimmie Stephens alone (Docket No. 21), the Second Amended Complaint was subsequently corrected through the filing of duplicate originals to also include signatures of the Immediate Family Members (Docket Nos. 24-28, 31).  See Fed. R. Civ. P. 11(a) advisory committee's note to 1993 amendment ("Correction [of unsigned paper] can be made by signing the paper on file or by submitting a duplicate that contains the signature.").

4

**B.     Rule 8 Pleading Standards; Failure to State a Claim**

The Court may, *sua sponte*, dismiss a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") for failure to state a claim so long as the Court gives notice of its *sua sponte* intention to dismiss and provides the plaintiff with an opportunity to submit a written memorandum in opposition thereto. Seismic Reservoir 2020, Inc. v. Paulsson, 785 F.3d 330, 335 (9th Cir. 2015) (citations omitted).

Rule 12(b)(6) is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure ("Rule 8"). Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Pursuant to Rule 8, a complaint must contain a "short and plain statement of the claim" which "show[s] that the pleader is entitled to relief" and which provides the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation and quotation marks omitted). While Rule 8 does not require detailed factual allegations, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting id.) (quotation marks omitted). "[W]ell-pleaded factual allegations" in a complaint are presumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusions couched as a factual allegation" are not. Id. (citation and quotation marks omitted); see also Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.) (court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences") (citation omitted), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001); cf. Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir.) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.") (citations and quotation marks omitted), cert. denied, 565 U.S. 1093 (2011).
///

To satisfy Rule 8, a complaint must "contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that a specific plaintiff is entitled to relief from a specific defendant for specific misconduct. Id. (citation omitted). Allegations that are "merely consistent with" a defendant's liability to a particular plaintiff, or that reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Id. at 678-79 (citations and quotation marks omitted).

Complaints are liberally construed to give *pro se* plaintiffs "the benefit of any doubt." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). If a *pro se* complaint is dismissed for failure to state a claim, the court must "freely grant leave to amend" if it is "at all possible" that the plaintiff could correct pleading deficiencies by alleging different or new facts. Cafasso v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citation omitted). Nonetheless, liberality in granting leave to amend "is subject to several limitations" including "undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." Cafasso, 637 F.3d at 1058 (citations and internal quotation marks omitted). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) (citations omitted).

**C.    Federal Subject Matter Jurisdiction**

The Court has an independent duty to consider its own subject matter jurisdiction and must, *sua sponte*, dismiss an action whenever the Court determines that it lacks subject matter jurisdiction. See Fed. R. Civ. P. 12(h)(3) ("Rule 12(h)(3)"); California Diversified Promotions, Inc. v. Musick, 505 F.2d 278, 280

(9th Cir. 1974); see also O'Campo v. Ghoman, 622 Fed. Appx. 609, 610 (9th Cir. 2015) (district court may, *sua sponte*, dismiss case for lack of jurisdiction without giving notice to parties) (citing Scholastic Entertainment, Inc. v. Fox Entertainment Group, Inc., 336 F.3d 982, 985 (9th Cir. 2003)).

### D. Section 1981 Claims

Title 42, United States Code, section 1981 ("Section 1981") essentially prohibits private, intentional discrimination on the basis of race in the making and enforcement of contracts.[3] See generally General Building Contractors Association, Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982) (citations omitted); Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989) (citations omitted).

### E. Section 1983 Claims; Color of State Law Requirement

To state a viable claim under Section 1983, a plaintiff must plead that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's rights created by federal law. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).

It is presumed that private individuals and entities not affiliated with a state or municipal government generally do not act "under color of state law." See Florer v. Congregation Pidyon Shevuyim, N.A., 639 F.3d 916, 922 (9th Cir. 2011) ("We start with the presumption that conduct by private actors is not state action.") (citation omitted), cert. denied, 565 U.S. 1116 (2012); Price v. State of Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991) ("[P]rivate parties are not generally acting under

---

[3]Section 1981 provides, in pertinent part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, . . . .

42 U.S.C. § 1981(a).

7

color of state law."), cert. denied, 503 U.S. 938 (1992); see also American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 50 (1999) ("[Section 1983] excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful. . . .'") (citations and internal quotation marks omitted); Sutton v. Providence St. Joseph Medical Center, 192 F.3d 826, 835 (9th Cir. 1999) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes.") (citation and quotation marks omitted). Even when private parties cause a constitutional deprivation, they are not subject to Section 1983 liability unless in causing the deprivation (1) they acted under color of law, and (2) their conduct was properly attributable to the government. See Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 156 (1978); see also Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 936-37 (1982) (private corporation does not act under color of law unless its actions are fairly attributable to the government).

The actions of a private individual or entity may properly be attributed to the government for purposes of Section 1983 if at the time of an alleged constitutional violation (1) the private actor was performing a public function; (2) the private actor was engaged in joint activity with the government; (3) the private party acted under governmental compulsion or coercion; or (4) there was a sufficient nexus between the government and the private actor. Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (recognizing "at least four . . . tests" for determining whether private conduct amounts to state action) (citations and quotation marks omitted). Plaintiffs have the burden to establish state action under one of the foregoing tests. Florer, 639 F.3d at 922 (citation omitted); see also Kirtley, 326 F.3d at 1092 ("Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists.") (citation omitted).

///

### F. Americans with Disabilities Act

To state a claim for violation of the Americans with Disabilities Act

("ADA"), a plaintiff must essentially show that (1) he or she is a qualified individual with a disability; (2) he or she was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of his or her disability. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003).

### G. Emergency Medical Treatment and Active Labor Act

The Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA"), primarily "forbid[s] hospitals from providing different emergency care to patients on the basis of the patients' ability to pay." Baker v. Adventist Health, Inc., 260 F.3d 987, 995 (9th Cir. 2001) (citing Jackson v. East Bay Hospital, 246 F.3d 1248, 1254 (9th Cir. 2001)).[4] To that end, the EMTALA generally imposes two duties on qualifying hospital emergency rooms, specifically "a duty to screen a patient for an emergency medical condition, and, once an emergency condition is found, a duty to stabilize the patient before transferring or discharging him." Id. at 992 (citing 42 U.S.C. § 1395dd; Jackson, 246 F.3d at 1254-55); see also Jackson, 246 F.3d at 1256-57 (hospital has no duty to stabilize patient unless hospital has actually detected an emergency medical condition) (citation omitted).

Pursuant to a civil enforcement provision under the EMTALA, "[a]ny individual who suffers personal harm as a direct result of a participating hospital's [EMTALA] violation" may bring a civil action to "obtain those damages available for personal injury under the law of the State in which the hospital is located. . . ."

---

[4] Congress enacted the EMTALA (also referred to as the "Patient Anti-Dumping Act") because it "was concerned that hospitals were dumping patients who were unable to pay for care, either by refusing to provide emergency treatment to these patients, or by transferring the patients to other hospitals before the patients' conditions stabilized." Jackson, 246 F.3d at 1254 (citation omitted).

42 U.S.C.A. § 1395dd(d)(2)(A). However, individuals may not pursue such civil actions against a defendant other than the "participating hospital." See, e.g., Eberhardt v. City of Los Angeles, 62 F.3d 1253, 1256-57 (9th Cir. 1995) (plain text of EMTALA explicitly limits private right of action to participating hospital; holding EMTALA does not allow private right of action against physicians).

### III. DISCUSSION

#### A. The Action Is Subject to Dismissal for Failure to Effect Service on Any Defendant

As suggested by the above, the deadline to effect service on the remaining defendants (1) who were initially named in the Original Complaint was October 20, 2015 (90 days after the Original Complaint was filed on July 22, 2015); (2) who were initially named in the First Amended Complaint was November 16, 2015 (90 days after the First Amended Complaint was filed on August 17, 2015); and (3) who were initially named in the Second Amended Complaint was January 6, 2016 (90 days after the Second Amended Complaint was filed on November 16, 2015). See Fed. R. Civ. P. 4(m); McGuckin, 918 F.2d at 813. Even though the deadlines to effect service expired well over a year ago, the record contains no evidence that any defendant has been served. Absent plaintiffs showing of good cause for such failure, dismissal of this action without prejudice as against all such unserved defendants is appropriate. Fed. R. Civ. P. 4(m).

#### B. The Federal Claims Are Subject to Dismissal for Failure to State a Claim

The Second Amended Complaint fails to state a viable federal claim.

First, allegations in the Second Amended Complaint do not plausibly suggest that any specific defendant intentionally discriminated against any of the plaintiffs

///

on the basis of race – which is required, among other things, to state a claim under Section 1981.

Second, to the extent plaintiffs are attempting to assert constitutional claims under Section 1983 (as in prior iterations of the complaint), they fail to do so. Plaintiffs do not plausibly allege that any of the defendants – *i.e.*, a private medical center, medical personnel affiliated with the private entity, and what appears to be a private hospice – are state actors/acting under color of state law as required. See generally West, 487 U.S. at 57 n.15 ("the provision of medical services is a function traditionally performed by private individuals") (citation omitted); cf., e.g., Jackson v. East Bay Hospital, 980 F. Supp. 1341, 1357 (N.D. Cal. 1997) (for purposes of Section 1983, private doctor or hospital not state actor even though they received state or federal funding and were subject to governmental regulation) (citations omitted).

Even so, general and conclusory allegations that this action is brought for violations of a plaintiff's "civil rights," "8th and 14th Amendment Violations," or violation of "1st, 5th, 8th, 14th [Amendments]," or that various defendants "[f]ailed to train," were "deliberate[ly] indifferent in violation of 8th [Amendment] . . Risks of Harm," were "deliberate[ly] indifferent" and "reckless" when treating Velva Stephens, "failed to protect" Velva Stephens, "discriminated against [Velva Stephens] . . . because she was Black or African-American . . ." and/or generally engaged in "intentional discrimination [and] Racial Discrimination" (SAC at 2-6), do not plausibly suggest that any of the seven plaintiffs personally suffered any constitutional injury, much less one that could support a Section 1983 claim. See Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992) (per curiam) (vague and conclusory allegations of official participation in civil rights violations not sufficient to state claim under Section 1983) (citing Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982)); see also Iqbal, 556 U.S. at 680-84 (conclusory allegations in complaint which amount to nothing more than a "formulaic recitation

of the elements" are insufficient under pleading standard in Fed. R. Civ. P. 8) (citations omitted); cf. Ingraham v. Wright, 430 U.S. 651, 667-71 (1977) (Eighth Amendment prohibition against "cruel and unusual punishment" protects only criminal inmates) (citations omitted). Similarly, conclusory allegations that the defendants simply "failed to treat" or were negligent in their treatment of Velva Stevens are also insufficient to establish any specific constitutional violation. See Pena, 976 F.2d at 471 (citation omitted); cf. Smith v. Suiter, 579 Fed. Appx. 608, 608 (9th Cir. 2014) ("mistakes, negligence, or malpractice by medical professionals" generally do not amount to constitutional violation) (citing Toguchi v. Chung, 391 F.3d 1051, 1056-60 (9th Cir. 2004)). Ultimately, it appears that the plaintiffs simply seek damages predicated on the alleged wrongful death of their mother/immediate family member, Velva Stephens, which is a claim that arises, if at all, only under California state law. See Cal. Civ. Proc. Code § 377.60 (wrongful death actions – persons with standing).

Third, the Second Amended Complaint does not plausibly allege that any of the seven plaintiffs is a qualified individual with a disability or was excluded from participation in or otherwise discriminated against with regard to a public entity's services by reason of any such disability. Thus, the Second Amended Complaint does not state a viable claim under the ADA.

Fourth, general allegations in the Second Amended Complaint which are apparently intended to support a claim of patient "dumping" (*e.g.*, that unspecified defendant(s) "discharged [Velva Stephens] prior to stability[] because the HMO ran out" and without the consent of Velva Stephens or the plaintiffs, discharged Velva Stephens "for failure to pay for further treatment" in violation of the "patients Anti Dumping Act," and "discriminated against [Velva Stephens] for lack of monies [sic] and because she was . . . on MEDICARE"; that defendant Bansil "ordered [Velva Stephens] be dumped from St. Francis Medical [Center] . . . but changed [his] mind" and/or "discharge[d]" or "dump[ed]" Velva Stephens because she had

"[become] a nuisance . . . [and] the money ran out"; or that all defendants generally violated multiple provisions of the EMTALA) (SAC at 2-5), are insufficient to state a viable EMTALA claim. In short, such conclusory allegations do not plausibly suggest that any of the seven plaintiffs "suffer[ed] personal harm as a direct result" of any EMTALA violation that occurred while he or she was a patient seeking emergency medical examination or treatment. See Iqbal, 556 U.S. at 680-84 (citations omitted). To the extent plaintiffs are attempting to assert an EMTALA claim in their own right based on their familial relationship to Velva Stephens, and assuming (for purposes of this Order to Show Cause only) that such non-patient third parties may have standing to bring a damages claim pursuant to the EMTALA,[5] the Second Amended Complaint fails plausibly to state such a claim. As noted above, individuals may not pursue an EMTALA civil action against a defendant other than the "participating hospital." Eberhardt, 62 F.3d at 1256-57. Accordingly, no defendant other than perhaps the SFMC, is subject to a private EMTALA civil suit. To state a viable EMTALA claim against the SFMC, plaintiffs must plausibly allege that (a) the SFMC constituted a participating hospital and violated the EMTALA with respect to Velva Stephens (*e.g.*, failed properly to screen, treat, or transfer Velva Stephens); and (b) a particular plaintiff sustained harm *personal to him or her* "as a direct result" of such violation. See 42 U.S.C. § 1395dd(d)(2)(A). Plaintiffs have done neither. Conclusory allegations

---

[5]It is not clear whether a non-patient third party has standing to bring a claim under the EMTALA civil enforcement provision. Compare Pauly v. Stanford Hospital, 2011 WL 1793387, *4 (N.D. Cal. May 11, 2011) (private civil action for EMTALA violations limited to "individual for whose medical condition the emergency medical examination or treatment was sought") (citing Zeigler v. Elmore County Health Care Authority, 56 F. Supp. 2d 1324, 1327 (M.D. Ala. 1999)), reconsideration denied, 2011 WL 4411961 (N.D. Cal., Sep. 21, 2011), and motion to vacate denied, 2012 WL 92571 (N.D. Cal., Jan. 11, 2012) with Sampson v. Ukiah Valley Medical Center, 2017 WL 2834001, *11 (N.D. Cal. June 30, 2017) (distinguishing Pauly and rejecting contention that parents of deceased child did not have standing to bring case on behalf of decedent under EMTALA).

that all of the plaintiffs generally "depended upon [Velva Stevens] for support, guidance, [and] strength," and that Velva Stevens' "death was preventable" are insufficient. See Iqbal, 556 U.S. at 680-84 (citations omitted).

Finally, as with the First Amended Complaint, the remaining allegations in the Second Amended Complaint amount to little more than unintelligible stream-of-consciousness rambling – which is insufficient under Rule 8 to state any other viable claim. See Knapp v. Hogan, 738 F.3d 1106, 1109 & n.1 (9th Cir. 2013) (violations of Rule 8 "warrant dismissal" of complaint) (citations omitted), cert. denied, 135 S. Ct. 57 (2014); cf. Cafasso, 637 F.3d at 1059 ("pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling" violates pleading requirements under Federal Rules of Civil Procedure) (citation and internal quotation marks omitted); see also Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir.) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.") (cited with approval in Knapp, 738 F.3d at 1111), cert. denied, 540 U.S. 968 (2003); Davis v. Ruby Foods, Inc., 269 F.3d 818, 820 (7th Cir. 2001) ("The dismissal of a complaint on the ground that it is unintelligible is unexceptionable."); Stewart v. Ryan, 2010 WL 1729117, *2 (D. Ariz. Apr. 27, 2010) ("It is not the responsibility of the Court to review a rambling narrative in an attempt to determine the number and nature of a plaintiff's claims.").

### C. Absent a Viable Federal Claim, the State Law Claims Are Subject to Dismissal for Lack of Subject Matter Jurisdiction

Absent any independent basis of federal subject matter jurisdiction, the Court declines supplemental jurisdiction to hear plaintiff's state law claims. See, e.g., 28 U.S.C. § 1367(c)(3) (district court may decline supplemental jurisdiction over claim where "court has dismissed all claims over which it has original jurisdiction"); Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir.) (en

banc) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (citation and quotation marks omitted), supplemented, 121 F.3d 714 (9th Cir. 1997).

## IV. ORDERS

In light of the foregoing, IT IS HEREBY ORDERED:

1. Plaintiffs shall, **within fourteen (14) days,** show good cause in writing why the Court should not *sua sponte*, dismiss this action for failure to effect service upon any defendant and/or dismiss the Second Amended Complaint for failure to state a federal claim and for lack of subject matter jurisdiction as to the state law claims.

2. To the extent plaintiffs (a) have timely served the defendants and file proofs of service reflecting the same by the foregoing deadline, or show good cause for the failure to do so; and (b) believe they are able to allege different or new facts in an amended complaint which adequately corrects all of the pleading deficiencies identified above, they are granted *one final opportunity* to do so by filing a Third Amended Complaint on or before the foregoing deadline. The filing of such a Third Amended Complaint may serve as plaintiffs' response to the portion of this Order to Show Cause which calls upon plaintiffs to demonstrate why the Second Amended Complaint should not be dismissed for failure to state a claim and lack of subject matter jurisdiction (but not the portion of the Order to Show Cause which calls upon plaintiff to show good cause why this action should not be dismissed for failure to effect service).

Any Third Amended Complaint must: (a) be labeled "Third Amended Complaint"; (b) be complete in and of itself and not refer in any manner to any prior version of the complaint (see Local Rule 15-2); (c) have a caption which names all the parties (Fed. R. Civ. P. 10(a)); (d) contain a "short and plain" statement of the claim(s) for relief (see Fed. R. Civ. P. 8(a)); (e) make each allegation "simple,

concise and direct" (Fed. R. Civ. P. 8(d)(1)); (f) make allegations in numbered paragraphs, "each limited as far as practicable to a single set of circumstances" (Fed. R. Civ. P. 10(b)); (g) set forth clearly the sequence of events giving rise to the claim(s) for relief; (h) allege with sufficient specificity what each *specific* defendant did and how that defendant's conduct violated a *specific* plaintiff's rights; and (i) be signed by either an attorney of record or personally by the plaintiff(s), whichever is appropriate under the circumstances (Fed. R. Civ. P. 11(a)).[6] Plaintiffs may not change the nature of this suit by adding new, unrelated claims or defendants in any Third Amended Complaint. Cf. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (courts should reject "buckshot" complaints – *i.e.*, a complaint that alleges unrelated claims against different defendants) (citations omitted).

3.  If plaintiffs (or one or more of them) no longer wish to pursue this action, they may sign and return the attached dismissal form (or a copy thereof) by the foregoing deadline, which may serve as their response to this Order to Show Cause. Signature and return of the dismissal form (or a copy thereof) by a plaintiff will constitute such plaintiff's voluntary dismissal of this action without prejudice.

**Plaintiffs are cautioned that, absent further order of the Court, their failure timely to respond to this Order to Show Cause by (a) showing good cause in writing why the Court should not *sua sponte*, dismiss this action for failure to effect service upon the defendants; and (b) either showing good cause in writing why the Court should not *sua sponte* dismiss the Second Amended Complaint for failure to state a federal claim and lack of subject matter jurisdiction over state law claims or filing a Third Amended Complaint which**

---

[6]As indicated in note 1, supra, plaintiffs, as *pro se* litigants, may not represent or sign any pleading on behalf of any other plaintiff. Accordingly, to the extent any individual intends to be a plaintiff to this action, each such individual – if not represented by an attorney acting on his/her behalf or required to be represented by an attorney – must sign any Third Amended Complaint.

16

**adequately corrects all of the pleading defects in the Second Amended Complaint identified above; <u>or</u> (c) returning a completed and signed dismissal form, may result in the dismissal of this action with or without prejudice on the grounds set forth above, for failure diligently to prosecute, and/or for failure to comply with this Order to Show Cause.**

    IT IS SO ORDERED.

DATED: August 22, 2017

_____
HONORABLE MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

Attachment